Palma-Martinez v. Holder, Ms. Bennett. Good morning, Your Honors. My name is Jennifer Bennett. I represent Mr. Jose Palma-Martinez. This is a case in which Mr. Martinez is a 26-year-old male native and citizen of Guatemala. He appeared before Immigration Judge Fujimoto on September 30, 2014 and was ordered removed to Guatemala. He then appealed that decision to the Board of Immigration Appeals, and on March 21, 2014, the Board upheld the Immigration Judge's decision ordering Mr. Palma-Martinez removed to Guatemala. The issue in this case is that Mr. Palma-Martinez saw a 212-H waiver as a standalone waiver. A 212-H waiver allows a qualifying alien to be admitted when there is some basis for admission, for instance, a valid immigrant or non-immigrant visa, but when the alien is otherwise barred by one of the enumerated grounds of inadmissibility. In this case, we do not contest that Mr. Palma-Martinez was inadmissible based on having committed a crime involving moral turpitude. He was convicted in the District Court, the Federal District Court in Fort Wayne, Indiana, for having knowingly transferred a false identity document. However, he saw a 212-H standalone waiver because he was already a lawful permanent resident. He became a permanent resident of the United States at the young age of 15 on May 22, 2007. He lives in the United States. He lived in the United States with his fiancée, his two United States citizen children, and his entire family, mother, father, siblings, aunts, and uncles, who are all United States citizens. The 212-H waiver had Mr. Palma-Martinez left the country on a trip of international travel or even by foot to Mexico or Canada and returned, he would have been eligible for a 212-H waiver, or so that's what the immigration judge and the board held. However, it's questionable. The legislative intent behind the 212-H waiver is unclear. The immigration judge and the board both erred by failing to analyze the precedent in this case and give a fair analysis in their decision of Mr. Palma-Martinez's removal. The immigration judge simply issued a two-page decision with about a paragraph devoted to the 212-H waiver argument, and the board issued a mere three-page decision. Again, not referencing the legislative intent or the congressional purpose of 212-H. The petitioner in this case urges the court to take a further look. The Judolon case, which went to the Supreme Court in 2011, held that the distinction between those aliens who were inadmissible versus deportable for a 212-C waiver, not a 212-H, but similar, that there was no reason for disparate treatment between the two classes of aliens. This case is no different. It's absurd to distinguish between the two groups. If the waiver was intended to assist those who are now admissible and seeking to apply for adjustment of status to become a lawful permanent resident, then surely Congress intended for this waiver to apply for lawful permanent residents who've already availed themselves of the process, met the criteria, paid the fees, been productive members of our society. Mr. Palma-Martinez was not an ordinary individual. He'd rather... But he is deportable for having committed a crime of moral turpitude, right? He is deportable for having committed a crime of moral turpitude. But what we argue, Your Honor, is that 212-H is absurd to distinguish. Had he traveled and then returned, he would have been eligible for a 212-H waiver. And we believe that the Supreme Court in Judolong, comparing the 212-C waiver... There's a difference. What do you mean? If he had voluntarily taken a trip or something like that? Correct, Your Honor. Then he would be admissible. Then it would be an inadmissibility issue. Upon his return, when he was entered back into the country, he would have been placed in removal proceedings, but he would have been challenging inadmissibility rather than deportability. And I see that my time is up. Well, but he left, right? He did not leave the country, Your Honor. He's still here? He's actually in Guatemala right now. He was deported while the petition for review was pending. Well, I know, but he's left. He's gone, right? Correct. Okay. But if you're deported, are you arguing that even if you're deported, rather than just leaving and coming back and inadmissible, but you ask for a waiver? But you're saying if you're actually removed, you can still get this waiver? We're saying, Your Honor, that he should be allowed to, during proceedings, to have sought a 212-H, either non-protonc or... Well, wait. That's what you're saying. You're saying even though he was removed rather than leaving voluntarily, he still is entitled to claim this waiver, right? Even though it only talks about inadmissibility, doesn't it? I'm sorry. I'm not understanding your question, Your Honor. Well, you say even though he was removed... Correct. ...he still is entitled to the waiver. Well, not... ...to the waiver, right? He... We don't think that he's eligible to ask for the waiver. He wasn't at the time. Well, if he's not eligible to ask for it, what is the case about? I don't understand. Well, he would have been eligible had he left the country before he was ordered removed and been placed into... But he didn't leave the country, right? Correct. But we... So he had to be removed forcibly, so to speak. Well, but what's the basis for thinking that he can... I mean, you just said he's not... He's not... He can't ask for this waiver now because he was removed. So I don't know what you're seeking by way of relief. We're seeking that this case be... That he be allowed to apply for the waiver or that the case be remanded to... But what's the basis for his being able to apply for the waiver when he was removed? His basis was that he was already a lawful permanent resident and we're urging the court to look at the congressional history, the legislative intent behind the 212H waiver. You're saying he shouldn't have been removed? Correct. Yeah. And you want to somehow get him back here because he shouldn't have been removed in the first place? Correct, Your Honor. But you're not... When you say he shouldn't have been removed, you're not saying it was He was detained while the petition for review, during the window between the board's decision and the petition for review. And although we have not been able to ascertain the exact date on which he left the country, he was removed during that period of time. So he's still eligible to pursue this petition for review. But you're not saying the removal was illegal, are you? I'm not saying the removal was illegal, Your Honor. Okay. Well, thank you. Thank you. We'll hear from the government. Benner-Leon. Good morning, Your Honors. May it please the Court, Wendy Benner-Leon on behalf of the Attorney General of the United States. This case is controlled by this Court's decision in Klementinovsky. And also, the board had reiterated its position in a published decision in Ray Rivas. And Klementinovsky actually just forecloses the argument that they make, which is that he should have been able to apply for a 212H waiver without a concurrent adjustment of This is a waiver of inadmissibility that they wanted. Klementinovsky explains that he was Well, is it correct that if before being ordered removed, he had simply left voluntarily, he could apply for, you know, an inadmissibility waiver and come back? He could have self-deported. And yes, he could have. But this Court in Klementinovsky But does that mean your only argument is that the government wants to encourage self-deportation? Because if he leaves the country, then he's not going to be stealing Social Security identities anymore. Is that the idea? Well, I mean, this Court listed five different reasons why Congress might have distinguished between why have wanted self-deportation of aliens that are deportable. There was no There are other reasons besides that he won't be committing this crime if he's out of the country? I don't believe I don't understand what you're asking. Are there any other reasons for this distinction between removal and voluntary departure? Well, what the distinction was that this Court talked about in Klementinovsky was rather the treatment of someone who is deportable when DHS is trying to deport somebody who is deportable versus someone who is outside the country seeking admission. I don't understand. Suppose the person is deportable, but rather than waiting for the order to deport him, he leaves the country. Correct. And even though he's deportable, he can ask for this inadmissibility waiver, right? Because he would be seeking to be admitted. So why is there this distinction between removal and voluntary departure? So one of the things that is suggested is that, well, as long as he's outside the country, he's not committing crimes in the country. Is there any other reason for this distinction? Yes. Like I mentioned, this Court talked about them in Klementinovsky at page 792 and 793. One of the reasons that was pronounced was that Congress may have wanted aliens seeking waivers to do so from outside to discourage. Yes, why, I'm asking you. I'd like a reason for these distinctions. Is it totally arbitrary or what? This Court has said it's not. Well, what is the reason? I mean, I don't know how else to say it. Look, I'm asking you. There's a distinction made which looks arbitrary. Now, is there a reason for this distinction or is it just some silly law? No, it's not silly at all. Oh, what's the reason that doesn't make it silly? It's an extremely easy question. Let me put it this way. This is a waiver of indemnizability. Come on, you're missing the whole point. Why is the law distinguishing between having left the country ahead of the removal and having been removed? Now, why is the person who waits around and is removed, why is that person treated worse than the person who leaves before he's ordered removed? Part of the reason that this Court has said would be that Congress may have wanted to encourage self-deportation and for the alien to seek re-admission at the border to provide incentives for voluntary departure at their own expense. That's one thing because the government has to pay to deport aliens. It saves money. That's good. And also, you know, the person can't commit crimes in the U.S. Also, Congress may have wanted to punish those that were granted the privilege and opportunity to become a lawful permanent resident and basically came here and then committed crimes to whoever repaid that act, in this case. No, that doesn't make any sense. Wait a second. What are you talking about? I want a reason. I want your list of reasons. You said there were five reasons for treating these people differently. They're listed in Klementinovsky. Pardon? They're listed in Klementinovsky. Your Court, this Court, listed them in Klementinovsky. They're there, and the Court found that it did not violate equal protection. Okay, so I have to look at that case. Yes, it's controlling. All right. The other issue is, to answer your question, a waiver of immiscibility is to waive an application of being not immiscible. So if you're being deported, it does not waive a ground of deportation. All I was asking you was why there was this distinction. I know there is this distinction. It's all laid out. Okay, so you gave me a couple of reasons, and you referred to the case. So I'll look at those, and I'll get the rest of them. Yes, thank you. If, in the event that he had left voluntarily while this was pending and wanted to come back, if he were admitted, he would still be subject to deportation, wouldn't he, if this case hadn't been resolved? He would have been, if he was returning. He returned. Yes, he would still be subject to deportation. He would arrive back in the same condition that he left before, and now he'd be a permanent legal resident with this problem of the crime. Yes. And he would still be subject to deportation, even if he let him back in. Correct. But in that case, because he's trying to be admitted, and he had committed an act which is a ground of immiscibility, they would not be able to admit him without the waiver. So if he's outside the country trying to return, he needs the waiver. When you're in the country and you're charged with a ground of deportation, there is no waiver of deportation for a crime involving more interpreters. So the only way to waive a ground of immiscibility is to seek adjustment of status, and you have to be admissible for that and show you're admissible. In this case, he would not have been able to show that, but he would ask for a waiver in conjunction with that. Okay. Thank you. Thank you very much. And, yeah, Ms. Bennett, do you have anything further? Thank you, Your Honors. I just have two quick points on rebuttal. Opposing counsel has argued that Klementinovsky is the controlling case. That case keeps being cited because it's the only case in which the alien, similar to our client, has never left the country. However, we contest whether that's the controlling case. There's a series of case law after Klementinovsky, which was in 2007. Since then, a law versus the U.S., an 11th Circuit case, sheds a lot of light onto this argument, as well as the Judolon case I mentioned before the Supreme Court, even though that's a 212C analysis, and most recently Margulis v. Holder before this court in 2013. And that brings me to my second point. In the Margulis case, this court said that the board can reexamine, it can overrule, it can look at precedent, but it can't ignore precedent. It actually has to analyze and review it. And we believe that your question is this is silly law. What's the reason for the distinction? I see my time's out. If I may finish my thought. You can finish your sentence. We believe that this is precisely why we're urging this court at this time to take a look at this case again. We believe that the board and the immigration judge erred and should have given proper analysis to this because it is a complex issue. Thank you, Your Honor. Thank you very much to both counsel. In our last...